IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| MARCUS QUIN BUTLER, Institutional ID No. 05759411, | § § § |
| Plaintiff, | § § |
| v. | §  CIVIL ACTION NO. 5:20-CV-143-H-BQ § |
| C. ARENIVAZ, *et al.*, | § § |
| Defendants. | § § |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Marcus Quin Butler filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights while confined at the Texas Civil Commitment Center (TCCC). Compl. 1–15, ECF No. 1.[1] Butler seeks a declaratory judgment, injunctive relief, a "reversal of [his] disciplinary infraction and punishment," and punitive damages. *Id.* at 1, 5–6.

Butler filed his Complaint on June 26, 2020. ECF No. 1. Under Special Order No. 3-251, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. The undersigned subsequently granted Butler's Application to Proceed *In Forma Pauperis* (IFP). ECF Nos. 3, 6. The Court thereafter ordered Defendants to provide authenticated records related to Butler's claims. ECF No. 9.

After considering Butler's allegations in his Complaint, authenticated records provided by the TCCC and Texas Civil Commitment Office (TCCO), and applicable law, the undersigned

---

[1] Page citations to Butler's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

makes the following findings, conclusions, and recommendations to the United States District Judge.

## I. Standard of Review

Section 1915(e) requires dismissal of an IFP complaint *at any time* if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.[2] 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002) (affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a claim under § 1915(e)(2)(B)(i) and (ii)). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327. When analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements

---

[2] Butler is housed at the TCCC under an order and judgment of civil confinement. Thus, he is not a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening provisions of the Prison Litigation Reform Act. Because Butler sought and was granted leave to proceed IFP, however, he is nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2).

of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Discussion

### A. Butler's Claims

Butler asserts claims against the following Defendants: (1) Officer C. Arenivaz; (2) Captain of Security Victoria Rodriguez; (3) Unit Administrator Rachel Kingston; (4) Head Therapist Supervisor Kristina Luera; (5) and Administration Grievance Investigator Tiffany Maldonado. Compl. 2. Butler sues all Defendants in their individual and official capacities. *Id.* According to Butler, Defendant Kingston is "responsible for the overall administration and policy of the TCCC," Defendant Luera is "responsible for the overall wellbeing and Treatment Policy," and Defendant Maldonado is "responsible for the overall policy and administration." *Id.*

Butler's Complaint centers upon an incident involving Defendant Arenivaz on March 29, 2020. *Id.* at 3. He alleges that Defendant Arenivaz entered the punitive isolation area (also known as the special management unit or SMU) where Butler was housed and was "[w]earing her uniform t-shirt unbutton all the way down with her walkie-talkie . . . hanging from the middle of her t-shirt pulling it down from the weight of it," thereby "exposing the top part of her breast." *Id.* He further claims that "she was leaning on the desk with her left arm underneath her breast pushing them up to be more exposure [sic]." *Id.* According to Butler, he "was standing at his cell door looking out the door window at her . . . when she came to his cell door" with her chest "in [his] face" causing him to "blink[] his eyes a couple of times because he couldn't believe it." *Id.* Butler avers that Defendant Arenivaz then "slammed the little door on his cell door close[d] and said he was getting

a disciplinary infraction" for masturbating. *Id.* Per Butler, Defendant Arenivaz "wrote him a false bogus" disciplinary case. *Id.* Later, Defendant Arenivaz's superior, an unnamed sergeant, purportedly visited Butler to discuss the case; however, Butler claims the sergeant "wasn't even trying to hear what he had to say." *Id.* He claims he stayed in the SMU for thirty days pending the hearing on his disciplinary case.[3] *Id.* Butler complains that "he told his side of the story" but "he was still found guilty." *Id.* According to Butler, he was sentenced to time served and a six-month property/package restriction, which constitutes "unjust and cruel [and] unusual punishment." *Id.* at 3–4. While Butler acknowledges that he had a hearing, he claims "he never had a *fair* hearing" because it "was ran [sic] by all females who [are] friends with [Defendant Arenivaz]" and the "officials fail[ed] to specify what facts and evidence supported the finding of guilt." *Id.* at 3 (emphasis added).

Ultimately, Butler alleges Defendants violated his constitutional rights under the First, Sixth, Eighth, and Fourteenth Amendments, as well as TCCC policy and "PD22 rules."[4] *Id.* at 5.

### B. Butler has not stated a viable due process claim based on his disciplinary case.

Butler's primary contention is that Defendants violated his due process rights under the Fourteenth Amendment. Compl. 5. Specifically, in Butler's view, his stay in punitive isolation while awaiting his disciplinary hearing violated his right to be heard, and he did not receive a fair and impartial hearing because (1) the case "was ran [sic] by all females who [are] friends with"

---

[3] Authenticated records show that Butler received a hearing on April 24, 2020—26 days after the incident. The Court notes, however, that Butler concedes he was in punitive isolation at the time of the March 29 incident because he was "finishing off a disciplinary infraction" and, thus, it is unclear how much of the ensuing 26 day SMU confinement was attributable to Butler's previous violation and how much, if any, related to the occurrence made the basis of his claim herein. *See* Compl. 3.

[4] Butler does not explain what he means by "PD22 rules." *See* Compl. 5. Liberally construed, the Court considers "PD22 rules" as TCCC's internal protocol.

Defendant Arenivaz and (2) Defendant Arenivaz's family member (Sergeant Arenivaz) was present. *Id.* at 3, 5.

In his pleadings, Butler does not clearly state whether he is asserting a procedural or substantive due process claim. Liberally construing Butler's Complaint, the Court examines both.

### 1. *Butler has not demonstrated that Defendants violated his substantive due process rights.*

To the extent Butler challenges his placement in the SMU based on a violation of his substantive due process rights, he fails to plead facts setting forth a viable claim. As a civilly committed person, Butler is entitled to "more considerate treatment and conditions of confinement" than a prison inmate. *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). Because Butler "has been civilly committed to state custody as a [sexually violent predator]," however, "his liberty interests are considerably less than those held by members of free society." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224–26 (2005) and *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *see Kansas v. Hendricks*, 521 U.S. 346, 368 n.4 (1997) (stating that officials "enjoy wide latitude in developing treatment regimens [for SVPs]"); *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018) (noting that "the Constitution . . . affords a state wide latitude in crafting a civil commitment scheme" because "the state legislatures not only are equipped, but also possess the democratic mandate, to make difficult policy choices regarding the supervision and treatment of sexually violent predators" (citations omitted)). Ultimately, "[d]ue process requires only that 'the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed.'" *Brown*, 911 F.3d at 243 (quoting *Seling v. Young*, 531 U.S. 250, 265 (2001)).

As the Fifth Circuit observed in *Brown v. Taylor*, Texas maintains "twin goals of 'long-term supervision and treatment of sexually violent predators.'" *Id.* (quoting Tex. Health & Safety

Code Ann. § 841.001 (West 2017)). Butler has not pleaded sufficient facts demonstrating that his placement in the SMU—after he was found guilty of sexual misconduct—lacked a reasonable relation to these goals. Moreover, Butler pleads no facts concerning the conditions he experienced while in punitive isolation; he merely complains that he stayed there while awaiting his hearing. Compl. 3. Accordingly, where Butler does not allege facts suggesting that Defendants imposed conditions unrelated to Texas's goals of supervision and treatment, the Court cannot conclude Butler has stated a substantive due process claim based on his placement in the SMU. *See generally DeMarco v. Davis*, 914 F.3d 383, 386–87 (5th Cir. 2019) (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."); *Brown*, 911 F.3d at 243 (explaining that in the context of a substantive due process claim, "restrictive conditions alone do not state a due process claim"); *Thompson v. Fourth Judicial Dist. Court, Ouachita Par.*, Civil Action No. 3:12–cv–1645, 2012 WL 6600338, at *3 (W.D. La. Sept. 25, 2012) (citing *Ashcroft*, 556 U.S. at 679) (explaining that "in order to be afforded the benefits of this assumption [that plaintiff's factual allegations are true] a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations").

### 2. *Butler has not shown that Defendants violated his procedural due process rights.*

Butler alleges that Defendants violated his procedural due process rights in two ways: first, that he was denied the right to an impartial tribunal, and second, that he was denied the right to be heard because he stayed in punitive isolation pending his hearing. Compl. 3, 5.

The Fifth Circuit has not expressly determined the procedural due process standard applicable to SVPs such as Butler. *See Welsh v. Correct Care Recovery Sols.*, No. 19-10825, 2021 WL 487152, at *9, --- F. App'x ---- (5th Cir. Feb. 9, 2021). Other courts, however, have found

that, based on the Supreme Court's holding in *Sandin v. Conner*, 515 U.S. 472 (1995), which addresses the due process rights of prisoners, the deprivation must be "atypical and significant," in relation to the "ordinary incidents" of an SVP's commitment, to trigger federal procedural due process protection. *See Thielman v. Leean*, 282 F.3d 478, 484 (7th Cir. 2002) (explaining that civilly committed SVP "must identify a right to be free from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of his confinement" to state a procedural due process claim); *see also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998)) (noting that administrative segregation is "an incident to the ordinary life of a prisoner," and therefore "simply does not constitute a deprivation of a constitutionally cognizable liberty interest"). Given the lack of express controlling authority in this circuit, other courts' application of *Sandin* to SVP due process claims, and this circuit's conclusion that prisoner procedural protections apply to pretrial detainees,[5] the undersigned examines Butler's procedural due process claims in accordance with *Sandin*.

Under *Sandin*, absent an extreme deprivation of liberty, "the Constitution does not require that a [civilly committed person] be afforded *any process at all* prior to deprivations beyond that incident to normal [commitment] life." *Deavers v. Santiago*, 243 F. App'x 719, 721 (3d Cir. 2007); *see Creveling v. Johnson*, Civil Action No. 11–667 (SDW), 2011 WL 3444092, at *7 (D. N.J. Aug. 4, 2011) (citing *Deavers*, 243 F. App'x 721). Accordingly, where Butler has failed to plead facts establishing that he was subjected to deprivations beyond the ordinary incidents of his commitment, his procedural claim similarly fails. *See Sandin*, 515 U.S. at 487 (holding that absent

---

[5] In the instance of institutional disciplinary hearings, the distinction between a convicted prisoner and a pretrial detainee is without consequence because the Fifth Circuit has held that "[t]he best approach is to treat pretrial detainees and convicted inmates equally at disciplinary hearings." *Frank v. Larpenter*, No. 99-31242, 2000 WL 1598076, at *2–3 (5th Cir. Oct. 3, 2000) (unpublished table decision) ("The question here is whether pretrial detainees are entitled to *more rigorous* procedural due process protection" than "convicted inmates at a disciplinary hearing."); *see Fuller v. Donahoo*, No. 93-1447, 1994 WL 486931, at *2 (5th Cir. Aug. 10, 1994) (per curiam) (unpublished) (applying prisoner procedural due process protections to pretrial detainee).

a protected liberty interest, punitive isolation did not entitle prisoner to procedural protections as articulated in *Wolff v. McDonnell*, 418 U.S. 539 (1974)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (per curiam) ("*Sandin* establishes that [the plaintiff's] administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."); *Hitt v. McLane*, Cause No.: AU–17–CA–00289–SS, 2018 WL 1326507, at *5 (W.D. Tex. Mar. 15, 2018) (citing *Sandin*) ("In order to make out a procedural due process claim under § 1983, [an SVP] must first allege he has been deprived of a protected liberty interest.").

But even if Butler possesses a protected liberty interest in not being arbitrarily assigned to the SMU as a result of the March 29, 2020, incident, TCCC officials afforded Butler adequate due process. The authenticated records show[6] that TCCC officials held a behavior management hearing on April 24, 2020, where Butler was charged with, and found guilty of, sexual misconduct. According to authenticated records, both Butler and Defendant Arenivaz testified at the hearing. Butler stated, consistent with his allegations herein, "What I was doing, I was staring at her breast because she had her walkie talkie hooked on her shirt. I was just looking at her." Defendant Arenivaz "was confident" in her testimony that "she saw his hand on his erect penis."

In *Wolff*, the Supreme Court held that prisoners are entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the[ir] [liberty interest] is not arbitrarily abrogated." 418 U.S. at 557. Adequate due process requires that: (1) the prisoner receive written notice of the alleged disciplinary violation at least 24 hours before the hearing; (2) the prisoner be allowed to call witnesses and present documentary evidence; and (3) the hearing officer provide a written statement of the evidence relied on and the reasons for any disciplinary action taken. *See Coleman v. Dretke*, No. 7-03-CV-141-R, 2006 WL 929320,

---

[6] Butler concedes in his pleadings he in fact received a hearing, albeit one he alleges was not conducted fairly.

at *1 (N.D. Tex. Apr. 11, 2006) (citing *Wolff*, 418 U.S. at 563–68). Moreover, "[i]n the setting of prison disciplinary proceedings, due process requires that there be 'some evidence to support the findings made in the disciplinary hearing.'" *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457 (1985)).

Concerning the entitlement to an impartial hearing, "[i]n the context of a prison disciplinary action, the impartial tribunal requirement dictates that an official with direct, personal or other substantial involvement in the circumstances giving rise to the charge may not participate as a hearing officer." *Jost v. Quarterman*, No. 7:06-CV-031-O, 2008 WL 4787644, at *8 (N.D. Tex. Oct. 29, 2008) (citing *Rhodes v. Robinson*, 612 F.2d 766, 773 (3d Cir. 1979) and *Wilson v. Superior Court*, 582 P.2d 117, 124 (1978)). Stated differently, under *Wolff*, the disciplinary hearing officer may not have participated in the case as an investigating or reviewing officer. *See Gordon v. Thaler*, Civil Action No. H–11–3202, 2012 WL 4481925, at *5 (S.D. Tex. Sept. 26, 2012).

Butler's only claim as to the hearing itself is that it "was ran [sic] by all females who [are] friends with" Defendant Arenivaz, and that Defendant Arenivaz's family member (Sergeant Arenivaz)[7] was present. Compl. 3, 5. Taking Butler's allegations as true, his conclusory assertions, unsupported by accompanying facts, do not show that any member of the hearing panel—comprised of Defendants Rodriguez, Kingston, Luera, and Maldonado—was involved in the underlying charge or that they had a pre-determined bias against Butler. *See Swafford v. Cain*, Civil Action No. 13–0788–JWD–RLB, 2014 WL 4418537, at *4 (M.D. La. Sept. 8, 2014) ("[I]n the absence of any factual allegation to substantiate the plaintiff's assertion of bias or prejudice [by the disciplinary hearing officer], the Court finds that this claim is wholly unsupported and is

---

[7] The authenticated records do not reflect that Sergeant Arenivaz either attended the hearing or participated as an investigative or reviewing officer; nevertheless, even assuming her presence *and* participation, Butler alleges no facts showing that Sergeant Arenivaz had direct, personal, or other substantial involvement in the circumstances giving rise to the case.

9

therefore without substantive merit."); *Decker v. Stephens*, Civil Action No. 4:13–CV–300, 2014 WL 657708, at *6 (S.D. Tex. Feb. 14, 2014) (granting summary judgment where prisoner did not show "that the hearing officer was in any way connected with the underlying charge" and the record did not indicate "that the hearing officer showed bias during the disciplinary hearing"); *Coleman*, 2006 WL 929320, at *3 (dismissing "conclusory allegation that he was denied an [sic] fair hearing before an impartial hearing officer" because there was "no indication from the record that the officer had some pre-determined opinion or bias against him"); *Houser v. Dretke*, No. 7:02-CV-090-R, 2005 WL 770624, at *3 (N.D. Tex. Apr. 6, 2005) (rejecting prisoner's claim that disciplinary hearing officer was impartial because the allegations were "wholly conclusory and unsupported by the record"). And significantly, because Butler concedes that Defendant Arenivaz also testified (*see* Compl. 9), Butler's disciplinary case was supported by at least "some evidence." *See Martin v. Thaler*, C.A. No. C–12–305, 2013 WL 620376, at *8 (S.D. Tex. Jan. 22, 2013) (rejecting inmate's claim that the Warden was not impartial because the conviction was "supported by evidence presented at the hearing").

As for Butler's claim that his stay in punitive isolation while awaiting his disciplinary hearing violated his right to be heard, this allegation similarly does not rise to the level of a constitutional violation because he does not contend that Defendants deprived him of the protections outlined in *Wolff*. *See Jones v. Diamond*, 594 F.2d 997, 1017 (5th Cir. 1979), *on reh'g*, 636 F.2d 1364 (5th Cir. 1981) (applying *Wolff* to pretrial detainee's claim and holding that jailers must "accord[] the inmate minimum procedural due process, that is, inform him of the violation with which he stands charged and give him an opportunity informally to demonstrate that he is not guilty"); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (recognizing "[t]he minimum positive procedural rights accorded to prisoners" under *Wolff*).

10

Although Butler may have preferred to immediately appear before the disciplinary board, he acknowledges that he ultimately did receive a hearing, and was convicted and sentenced to time served. *See* Compl. 3; *see also Hewitt v. Helms*, 459 U.S. 460, 472 (1983) (discussing *Wolff* and holding that prison officials must conduct a review "within a reasonable time after confining him to administrative segregation"), *abrogated on other grounds by Sandin*, 515 U.S. 472. Further, he acknowledges that he received advance notice of the charges and participated in a hearing during which both he and the complaining officer testified. *See* Compl. 3, 8. Thus, Butler's claim that he was denied the right to be heard is unfounded. *Luken*, 71 F.3d at 194 (affirming dismissal at screening of procedural due process claim where inmate "concede[d] that he received a hearing within ten days of being placed in administrative segregation"); *Brown v. Wilson*, Civil Action No. 5:10–CV–181–BG ECF, 2012 WL 6708443, at *7 (N.D. Tex. Apr. 30, 2012) (concluding "[d]isciplinary procedures comport with procedural due process" if procedures comply with basic *Wolff* standards), *R. & R. adopted as modified by* 2012 WL 6719464 (N.D. Tex. Dec. 27, 2012); *Conely v. Thaler*, C.A. No. C–11–333, 2012 WL 1223770, at *5–7 (S.D. Tex. Feb. 11, 2012) (dismissing procedural due process claim where disciplinary cases met "all three *Wolff* requirements"), *R. & R. adopted by* 2012 WL 1565460 (S.D. Tex. May 2, 2012); *Ancrum v. Holt*, Civil Action No. 3:11–CV–1420, 2012 WL 2905930, at *4 (M.D. Pa. July 16, 2012) ("[T]o succeed on a procedural due process claim related to a disciplinary hearing, a petitioner must show a violation of the *Wolff* standards."), *aff'd*, 506 F. App'x 95 (3d Cir. 2012); *see also Edwards v. Johnson*, 209 F.3d 772, 777–79 (5th Cir. 2000) (rejecting immigration detainee's claim "that his placement in administrative segregation for eleven days before his disciplinary hearing, and his fifteen days in disciplinary segregation . . . was a violation of his [due process] rights").

In sum, Butler's allegations do not show that Defendants violated his due process rights. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). According to the authenticated records and Butler's own allegations, Defendants provided Butler with such an opportunity.

### C. Butler pleads no facts plausibly showing that Defendants violated his constitutional rights under the First, Sixth, and Eighth Amendments.

To the extent Butler attempts to raise claims under the First, Sixth, and Eighth Amendments, such claims are similarly meritless.

Liberally construed, Butler alleges that Defendants' failure to "fully investigate his grievances" violated his First Amendment rights. *See* Compl. 4–5. This claim fails because Butler has no constitutional right to have grievances resolved to his satisfaction. *See Aron v. Green*, No. 4:14–CV–109–A, 2014 WL 1917543, at *2 (N.D. Tex. May 12, 2014) ("Denying plaintiff's grievances, or failing to resolve them in the manner preferred by plaintiff, is not a violation of plaintiff's constitutional rights."); *Bohannan v. Griffin*, No. 4:11–CV–299–A, 2012 WL 218953, at *3 (N.D. Tex. Jan. 24, 2012), *rev'd on other grounds sub nom. Bohannan v. Doe*, 527 F. App'x 283 (5th Cir. 2013) (concluding SVP had "no constitutional right to have his grievances answered"); *see also Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir. 2012) (rejecting appellant's claim that prison official's failure to conduct an adequate investigation into his grievance implicated due process concerns "because [appellant] lacks a protected interest in a favorable resolution to his grievances"); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) ("[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").

Next, Butler arguably attempts to state a Sixth Amendment claim by alleging "he didn't have any counsel substitute or Mental Health present to help him" at the disciplinary hearing. Compl. 5. This claim is unavailing, however, because Butler possesses no constitutional right to counsel in a disciplinary hearing. *See Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976) (quoting *Wolff*, 418 U.S. at 570) (reaffirming prior holding that "inmates do not 'have a right to either retained or appointed counsel in disciplinary hearings'"); *Enriquez v. Mitchell*, 533 F.2d 275, 276 (5th Cir. 1976) (acknowledging *Baxter*); *Cunningham v. Davis*, 2:17-CV-62-D-BR, 2019 WL 367838, at *5 (N.D. Tex. Jan. 23, 2019) (same), *R. &. R. adopted by* 2019 WL 366263 (N.D. Tex. Jan. 30, 2019).

Third, Butler contends that his punishment was "unjust and cruel [and] unusual" and therefore violated his Eighth Amendment rights. Compl. 4–5. Butler pleads no facts as to the conditions of his confinement while in punitive isolation; instead, he seeks to challenge the underlying decision to punish him. *See id.* Accordingly, Butler's Eighth Amendment claim is merely a restatement of his due process claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that a pro se document is to be liberally construed and is held to less stringent standards than pleadings drafted by lawyers); *Miguel v. Cochran*, Civil Action No. 5:20-CV-041-BQ, 2020 WL 7700633, at *7 (N.D. Tex. Nov. 25, 2020) (construing liberally SVP's medical claim and analyzing it under the correct constitutional amendment), *R. &. R. adopted by* 2020 WL 7698760 (N.D. Tex. Dec. 28, 2020).

Finally, to the extent Butler complains that Defendants violated TCCC policy and "PD22 rules" (Compl. 5), he again fails to state a claim. Such breaches, standing alone, cannot form the basis of a viable § 1983 claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Harris v. Duke*, Civil No. 7:12-CV-127-O, 2015 WL 13544392, at *4 (N.D. Tex. Sept. 29, 2015)

("Assuming the truth of Plaintiff's allegations, his claims that county jail rules, policies, and guidelines were not followed [when he was allegedly denied medical care for a broken leg] do not rise to the level of constitutional violations."), *aff'd as modified*, 689 F. App'x 290 (5th Cir. 2017).

### D. Butler's claims against Defendants in their official capacities should be dismissed.

Butler also sues each Defendant "individually in her official capacities,"[8] seeking both punitive damages and equitable relief. Compl. 1–2, 5–6. A suit against Defendants in their official capacities is simply another way of stating a claim against the Texas Civil Commitment Center, and therefore the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Hitt*, 2018 WL 773992, at *11 ("The TCCO is a state agency . . . [t]hus, the suit against [Defendant] in her official capacity is a suit against the TCCO, an agency of the State of Texas.").

Even if Butler stated an underlying constitutional violation, his claim for punitive damages against Defendants in their official capacities is nevertheless barred. It is well settled that suits for monetary damages against state officials in their official capacities are precluded by state sovereign immunity and the Eleventh Amendment. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892–95 (E.D. Tex. 2006) (collecting authorities and recognizing that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). As such, any claim for monetary damages against Defendants in their official capacities must be dismissed. *Id.* at 894 (dismissing § 1983 official capacity claim against state official for money damages based on Eleventh Amendment immunity and because a state is not considered a "person" under § 1983).

---

[8] Butler also alleges that Defendant Kingston is "responsible for the overall administration and policy of the TCCC," Defendant Luera is "responsible for the overall wellbeing and Treatment Policy," and Defendant Maldonado is "responsible for the overall policy and administration." Compl. 2. To the extent Butler attempts to bring a policy claim against the TCCC, Butler cannot state a viable policy claim without an underlying constitutional violation. *See Hitt v. McLane*, A–17–CV–289–SS, 2018 WL 773992, at *8–9 (W.D. Tex. Feb. 7, 2018) (dismissing SVP's policy claim against Correct Care Recovery Solutions—"a private entity [that] operates TCCC"—where he "failed to allege an underlying constitutional violation"), *R. & R. adopted by* 2018 WL 1326507 (W.D. Tex. Mar. 15, 2018).

Eleventh Amendment immunity similarly bars Butler's requests for injunctive relief and declaratory judgment against Defendants in their official capacities. *See Little v. Tex. Atty. Gen.*, Civil Action No. 3:14-CV-3089-D, 2014 WL 5039461, at *1, *3 (N.D. Tex. Oct. 9, 2014) (granting defendant's motion to dismiss under Rule 12(b)(1) as to claim for injunctive and declaratory relief against state agency because "[w]hen Eleventh Amendment immunity applies, it deprives the court of subject matter jurisdiction" and bars the claim). Moreover, where Butler has failed to establish an underlying constitutional violation, he cannot obtain equitable relief. *See Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015) ("As an injunction is a remedy that must be supported by an underlying cause of action, the failure of [appellant's] constitutional . . . claims also warrants dismissal of this claim."); *Pierce v. Kaufman Cty. Dist. Attorney's Office*, No. 3:16-CV-2554-G-BH, 2018 WL 5624195, at *7 (N.D. Tex. Sept. 27, 2018) (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004)) ("Injunctive relief is 'potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.'"), *R. & R. adopted by* 2018 WL 5620548 (N.D. Tex. Oct. 29, 2018).

### III. Recommendation

For these reasons, the undersigned recommends that the United States District Court dismiss with prejudice all claims against all Defendants for failure to state a claim in accordance with 28 U.S.C. § 1915.

### IV. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served

with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated: March 9, 2021.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE